**SIGNED THIS: February 1, 2013**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | Case No. 09-71353 |
| ANTHONY JAMES GRASON, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

**O P I N I O N**

An old adage warns that bad facts make bad law.[1] The theory behind the adage is that when the equities in a case favor a result that is contrary to a strict reading of the law, a court may be inclined to carve out an exception to the law or develop a strained interpretation of the law to reach the desired equitable result. But, when the law has been manipulated to reach the desired result in

---

[1] The adage has been stated in a number of ways and attributed to a variety of sources. Justice Oliver Wendell Holmes, dissenting from a majority opinion, said, "Great cases, like hard cases, make bad law." *Northern Securities Co. v. United States*, 193 U.S. 197, 400 (1904). More than 100 years later, Justice Samuel Alito, also dissenting from the majority, stated, "[T]ragic facts make bad law." *Wyeth v. Levine*, 555 U.S. 555, 604 (2009).

one case, the precedent set may result in undesired results in other cases. Thus, courts are cautioned that yielding to the equities in a case, despite contrary law, may result in the making of bad law. In this case, the Court is being urged, in the face of bad facts, to make bad law.

Before the Court is Karl Meurlot's Motion for Relief from Stay in this reopened case. Mr. Meurlot is not now, nor has he ever been, a creditor of the Debtor. Rather, he was the buyer at a sheriff's sale of real estate owned by the Debtor. The sheriff's sale took place literally minutes after this case was filed and, accordingly, occurred in violation of the automatic stay. After learning of this case filing, the foreclosing creditor, HSBC Bank U.S.A., took no action to seek relief from or annulment of the stay but, instead, proceeded to obtain a state court order confirming the sale. Relying on the sale confirmation, Mr. Meurlot obtained a state court order placing him in possession of the property. Now, more than three years after the sheriff's sale and after the Appellate Court of Illinois has twice reversed the state court orders, at least in part, because of the Debtor's claims that the sheriff's sale violated the stay, Mr. Meurlot, but not HSBC Bank U.S.A., seeks relief from this Court.

Mr. Meurlot claims that he has made a significant financial investment in the property he purchased and that he will be irreparably harmed unless this Court either finds that no stay took effect upon the filing of this case or annuls the stay that did take effect. He asserts that the Debtor has abused the system by filing multiple bankruptcies and that HSBC Bank U.S.A. will get a windfall if the original sale is vacated and a new sale of the now-much-improved and more valuable property occurs. Because he claims to be the least culpable of the all of the players here, Mr. Meurlot asks the Court to ignore the obvious defects in his arguments and simply make things right for him. For the reasons set forth below, this Court must decline to do so and will deny the Motion for Relief from Stay.

## I. FACTUAL & PROCEDURAL BACKGROUND

The facts of this case are complex but undisputed.[2] Debtor, Anthony James Grason ("Debtor"), has filed three Chapter 13 bankruptcy cases in this Court. The first case (No. 08-71631) was filed July 8, 2008. In that case, HSBC Bank U.S.A. ("HSBC") filed a Motion for Relief from the Automatic Stay, alleging that the Debtor was in default on post-petition mortgage payments for the property at 4202 West Route 36 in Decatur, Illinois. HSBC sought relief from the stay to foreclose on that property. Although the Debtor objected to HSBC's motion, after a hearing held November 20, 2008, the Court granted HSBC relief from the automatic stay.

On November 11, 2008, the Chapter 13 Trustee ("Trustee") filed a motion to dismiss the Debtor's first case. The Trustee alleged that the Debtor had failed to provide copies of required tax returns and pay advices in a timely manner. After a hearing, the case was dismissed on December 8, 2008.

The Debtor filed this case on May 5, 2009. The Debtor filed his petition in person at 8:37 a.m. and the petition was uploaded into the Court's electronic filing system at 9:02 a.m. the same day. With his petition, the Debtor filed an Exhibit D — Individual Debtor's Statement of Compliance with Credit Counseling Requirement, which stated that he had obtained the requisite credit counseling but did not yet have the certificate from the counseling agency. The form admonishes debtors that the certificate must be filed within fifteen days after the case filing.

---

[2] Many of the facts set forth herein are taken from opinions of the Appellate Court of Illinois. *See generally HSBC Bank U.S.A., N.A. v. Grason*, 2012 IL App (4th) 110788-U; *HSBC Bank U.S.A. v. Grason*, No. 4-10-0090 (Ill. App. Ct. Apr. 11, 2011) (http://www.state.il.us/court/R23_Orders/AppellateCourt/2011/4thDistrict/April/4100090_R23.pdf). Both opinions were issued under Ill. Sup. Ct. R. 23 and are not used here for their precedential value, but solely for the purpose of reciting the factual and procedural history of the case. It is clear from the opinions that the Appellate Court had transcripts of some of the hearings held in the state court foreclosure case. None of those transcripts were provided to this Court. Likewise, few of the actual pleadings and documents filed in the foreclosure case were submitted to this Court.

Because the Debtor failed to provide his certificate of credit counseling within the fifteen days allotted, this case was dismissed on May 21, 2009. Later that same day, an attorney entered an appearance for the Debtor and filed a credit counseling certificate evidencing that the Debtor had obtained the counseling on April 13, 2009. The certificate was docketed as a Motion to Reinstate Case but the filing consisted solely of the certificate. Still later that same day, the Debtor's attorney filed a Supplemental Motion to Reinstate Case which included another copy of the certificate of credit counseling and a request that the case be reinstated. At a hearing on June 2, 2009, the Debtor's attorney appeared and told the Court that, although the Debtor might be entitled to reinstatement because he actually had met his credit counseling obligation, the attorney did not have sufficient information to file the Debtor's schedules and other required documents in a timely fashion. Further, the attorney realized that, because of the earlier case filing within one year of this case filing, a motion to extend the stay should have been filed. But, such a motion could no longer be filed and heard within the thirty days after case filing time limit. Accordingly, the attorney asked that his Supplemental Motion to Reinstate be denied. The Court entered an order that day denying the motion.

The Debtor filed his third case (No. 09-72064) on July 13, 2009. The case was dismissed the next day because the Debtor failed to file a credit counseling certificate or a request to have the filing of the certificate waived or excused. On July 16th, the Debtor filed a motion to reinstate the case and a copy of his April 13th credit counseling certificate. The case was reinstated on August 11, 2009. Within two weeks of the case being reinstated, however, the Trustee filed a motion to dismiss because the Debtor had failed to commence plan payments within thirty days of the case filing. After the Debtor failed to timely object to the Trustee's motion, the case was dismissed on September 23, 2009.

While Debtor's three bankruptcy cases were pending, a lawsuit filed by HSBC against the

Debtor in the Circuit Court of Macon County, Illinois, to foreclose on a mortgage on the property at 4202 West Route 36, Decatur, Illinois, was also proceeding. The case was filed in March 2008. On June 17, 2008, the state court entered a default judgment and a judgment of foreclosure and sale against the Debtor. On February 19, 2009, HSBC filed a notice of sheriff's sale, which was then continued twice by HSBC, and finally set for May 5, 2009, at 8:30 a.m. On May 4, 2009, the Debtor, through counsel, filed an emergency motion for a 30-day stay of the sheriff's sale. Arguments on the Debtor's motion were heard the next morning before the sale took place. Because the state court denied the motion, the sheriff's sale went forward thereafter.

At the sheriff's sale, Cynthia Deadrick and Mark Wolfer were the high bidders with a bid of $260,401, which they apparently made on behalf of Mr. Meurlot. The bid left the Debtor with a deficiency of $215,543.28 due to HSBC. The state court continued hearing on the confirmation of the sale until May 26, 2009.

Neither the Debtor nor his attorney were present at the May 26th confirmation hearing. However, Mr. Meurlot and an attorney for HSBC were present at the hearing and represented to the court that the Debtor might be in bankruptcy. The matter was continued for a further hearing on June 30, 2009.

Also on May 26th, Mr. Meurlot filed an objection to a motion the Debtor had filed to vacate the sale and a response to the Debtor's objection to confirmation of the sale.[3] The Debtor had asserted that his bankruptcy filing resulted in the issuance of an automatic stay and, accordingly, the sheriff's sale which he claimed occurred thereafter violated the stay and was void. Mr. Meurlot filed a second objection and response on June 3, 2009. In the June 3rd filing, Mr. Meurlot argued that

---

[3] It is unclear from the record when the Debtor actually filed his motion to vacate the sale and his objection to confirmation of the sale. The state court docket reflects that the motion and objection were formally filed on December 29, 2009, although apparently these were the same motion and objection to which Mr. Meurlot and HSBC responded in May and June 2009.

-5-

there was no automatic stay in place as a result of the Debtor's May 5th bankruptcy filing because the case had been dismissed on May 21, 2009, and because this Court denied the Debtor's request for reinstatement.

On June 29, 2009, HSBC filed a response to the Debtor's motion to vacate the sale. Apparently relying on the timing of the entry of this case into this Court's electronic filing system, HSBC argued that the sale did not violate the automatic stay because the sale actually took place before the Debtor filed this case. HSBC also noted that this case was dismissed, which HSBC averred allowed it to proceed.

On June 22, 2009, the following entry was made on the state court docket: "Phone communication from Plaintiff's counsel. On motion, allotment of 6/30/09 is VACATED. Cause continued to further order of court." Notwithstanding this entry, on June 30th, the state court entered an order approving the report of sale and distribution, an order of possession, and an order for an *in personam* deficiency. Neither the Debtor nor his attorney were present at the June 30th hearing. But, Mr. Meurlot and HSBC's attorney were present and specifically discussed with the court that the docket contained the notation that the hearing had been cancelled. All agreed on the record that they were not concerned about the apparent lack of notice to the Debtor.

On July 2nd, the Debtor filed a motion to vacate the orders entered on June 30th. The Debtor cited the June 22nd docket entry as the reason for his failure to appear at the June 30th hearing. A hearing on July 14, 2009, was set for all pending motions. That hearing was continued because of a suggestion that the Debtor had filed bankruptcy again.

On October 9, 2009, HSBC filed a motion requesting a ruling on the Debtor's July 2nd motion to vacate. On December 23, 2009, Mr. Meurlot filed a memorandum of law responding to the Debtor's motion to vacate. Mr. Meurlot argued that the court should find that the sale occurred at 8:30 a.m., as stated in the published notice of the sale. Further, he argued that even if the sale

occurred after the Debtor filed this case, no automatic stay took effect because the Debtor was ineligible to be a debtor.

On December 29, 2009, the state court held a hearing on all pending motions. The Debtor's attorney insisted that the sale on May 5th was void because it took place after 8:37 a.m. HSBC's attorney said that the sale likely occurred after 8:37 a.m., but before 9:02 a.m. Again, HSBC relied on the time this case was entered in the electronic filing system rather than when the Debtor's petition was file-stamped. The court ultimately confirmed the sale, saying that the filing of this case did not bar confirmation of the sale. The court did not make any factual finding as to what time the sale actually occurred.

The Debtor took an appeal of the orders confirming the sale and awarding possession to Mr. Meurlot to the Appellate Court of Illinois. The Appellate Court, in an opinion entered April 11, 2011, remanded the case and directed the lower court to make a factual finding regarding whether the sale occurred before or after 8:37 a.m. on May 5, 2009. The Appellate Court also held that, even if the court were to find that the sale occurred before 8:37 a.m., the confirmation of the sale on June 30, 2009, was in error because of the June 22nd docket entry stating that the confirmation hearing was vacated and continued until further court order.

The Appellate Court noted that, at the June 30th confirmation hearing, neither the Debtor nor his attorney were present and that they did not consent to proceeding with the hearing on that day. The Appellate Court also noted that the lower court had said on the record that it was common practice in Macon County to allow parties to telephone the clerk of court to obtain the continuance or cancellation of a hearing, which would then be noted on the case docket. The Appellate Court found that, when a court uses such a practice, the court must reschedule the hearing with notice to all parties before proceeding.

After the case was remanded, HSBC moved to vacate the sale, refund the sale proceeds, and

vacate the order approving the report of sale and distribution, order of possession, and order for *in personam* deficiency. A status hearing on HSBC's motion was held on May 24, 2011, and then rescheduled to June 24, 2011, for further hearing on the issue of what time the sale occurred.

On June 7, 2011, HSBC filed an amended motion to vacate the sale, refund the sale proceeds, and vacate the trial court order approving the report of sale and distribution, order of possession, and order for *in personam* deficiency. HSBC said that it was willing to concede that the sale occurred after 8:37 a.m.

In response to HSBC's concession on the sale time, Mr. Meurlot filed a brief. According to Mr. Meurlot, the two issues before the state court were: (1) whether the sale occurred after 8:37 a.m.; and (2) whether the automatic stay was in effect at the time of the sale. Among other things, Mr. Meurlot said that the Debtor had the burden of proving that the sale took place after 8:37 a.m. and that the automatic stay was in effect at that time. Mr. Meurlot also argued that no automatic stay went into effect when the Debtor filed this case on May 5, 2009, because the Debtor was not eligible to be a debtor at that time.

At the June 24th hearing, the court found that the sale probably occurred after 8:37 a.m. on May 5, 2009, but that it could not make such a finding with a hundred percent certainty. The court also found, based on its interpretation of this Court's order dismissing the Debtor's first bankruptcy case, that the Debtor was ineligible to be a debtor at the time he filed this case. Thus, the court held that no automatic stay went into effect when the Debtor filed this case. Hence, the court concluded that the time of the sale was irrelevant. On that basis, the court denied HSBC's motion to vacate the sale.[4] The Debtor again appealed to the Appellate Court of Illinois.

In an opinion entered September 19, 2012, the Appellate Court reversed the lower court,

---

[4] The record is unclear, but at the same time that the state court denied HSBC's motion to vacate the sale, it also appears to have denied the Debtor's motion to vacate the sale that had been made "live" again after the Debtor's victory on his first appeal.

holding that the lower court failed to make a finding, as it had been instructed to do, on whether the sheriff's sale occurred before or after 8:37 a.m. The Appellate Court again ordered the lower court to make a finding on that issue. The Appellate Court also questioned the appropriateness of the court hearing arguments on June 24th about whether the Debtor was eligible to be a debtor because the court, at the hearing on May 24th, specifically stated that the only issue before it on June 24th would be the timing of the sale. The Debtor did not raise that procedural issue on appeal, however, so the Appellate Court proceeded to the merits of the eligibility question.

The Appellate Court reversed the lower court's ruling that the Debtor was not an eligible debtor. It said that it anticipated that HSBC or Mr. Meurlot would have returned to this Court to seek a ruling on whether the automatic stay was in effect on the day of the sheriff's sale. Additionally, the Appellate Court suggested that HSBC or Mr. Meurlot could have asked this Court to annul the automatic stay.

The Appellate Court also clarified that the lower court should have vacated its order confirming the sale in light of the June 22nd docket entry that cancelled the June 30th confirmation hearing. Therefore, the Appellate Court reiterated that it was vacating the confirmation of the sale.

Upon its reversal and remanding of the case, the Appellate Court opined that the best course of action would be for HSBC or Mr. Meurlot to obtain a definitive ruling from this Court. Accordingly, on October 11, 2012, Mr. Meurlot filed his Motion to Reconsider Dismissal and Reopen Case. This Court reopened this case on October 30, 2012, over the Debtor's objection.

Mr. Meurlot also filed a Motion for Relief from Stay and, later, a Supplement to Motion for Relief from Stay. Mr. Meurlot makes three arguments: (1) that the Debtor's petition filed on May 5, 2009, did not create an automatic stay in this case because, under 11 U.S.C. § 109(g), the Debtor was not eligible to be a debtor; (2) that 11 U.S.C. § 109(h) made the Debtor ineligible to be a debtor because the Debtor failed to obtain credit counseling in advance of filing the petition and, thus, no

automatic stay arose; and (3) that even if the automatic stay went into effect with the filing of the May 5th petition, this Court should annul the stay.

The Debtor's response, *inter alia*, denies that 11 U.S.C. § 109(g) made him ineligible to be a debtor in this case. He also asserts that Mr. Meurlot has no standing in this case because Mr. Meurlot has no legally cognizable interest in the property at 4202 West Route 36, Decatur, Illinois, and is not a party in interest in this case.

A hearing was held on Mr. Meurlot's Motion for Relief from Stay on November 14, 2012. The matter is ready for decision.

## II. JURISDICTION

This Court has jurisdiction over the issues presented here pursuant to 28 U.S.C. § 1334. Motions for relief from the automatic stay and the other legal questions presented in this case are core proceedings. *See* 28 U.S.C. §§ 157(b)(2)(A), (G).

## III. LEGAL ANALYSIS

Having considered Mr. Meurlot's Motion and Supplement, the Debtor's Response, and the arguments made at the hearing, this Court finds that the issues presented can be resolved by a consideration of whether Mr. Meurlot has standing to seek relief from this Court. The Debtor alleges that Mr. Meurlot is merely a bystander with no right to invoke this Court's jurisdiction, and accordingly, has no standing. Standing refers to whether a litigant "is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Because this Court agrees with the Debtor that Mr. Meurlot lacks standing, the Motion for Relief from Stay must be denied.

### A. The Law of Standing

Standing is generally discussed in the context of either constitutional standing or prudential standing. Standing in the constitutional sense is an element of the "case or controversy" requirement of Article III of the Constitution. To have this type of standing, a litigant must show: (1) that he has suffered an injury in fact, (2) that the injury is fairly traceable to the defendant's conduct, and (3) that the injury is likely to be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

An "injury in fact" refers to the invasion of a legally-protected interest which is both concrete and personal to the injured person and is actual or imminent rather than hypothetical or speculative. *Id.* at 560. To say that the injury is fairly traceable to the defendant's conduct means in part that the injury must not be the product of some independent action taken by a third party that is not before the court. *Id.* at 560-61. Self-inflicted harm does not confer standing because it does not qualify as an injury in the Article III sense and, more importantly, because it is not traceable to the defendant's conduct. *See Pa. v. N.J.*, 426 U.S. 660, 664 (1976) ("No State can be heard to complain about damage inflicted by its own hand."); *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 518 (7th Cir. 2010). The notion of "redressability" means that it must be likely, and not just conceivable, that the injury will be remedied by a favorable decision. *Lujan*, 504 U.S. at 561.

The party asserting standing has the burden of establishing its existence by a preponderance of the evidence. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998); *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999). The Article III standing requirement is a jurisdictional prerequisite to reaching the merits of a suit. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009); *Smith v. Wisc. Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1142 (7th Cir. 1994). Although standing is not dependent on the merits of the plaintiff's suit, it frequently turns on the nature and origin of the asserted claim. *Warth*,

422 U.S. at 500. Further, because Article III standing is jurisdictional, a court must dismiss an action if such standing is absent. *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008).

The concept of prudential standing is grounded not in Article III of the Constitution but in "matters of judicial self-governance" designed to guarantee that courts only resolve disputes that are appropriate for judicial resolution. *Warth*, 422 U.S. at 500. One prudential limitation on standing is that a party generally may not assert the rights of another person or entity. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004); *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 294 (7th Cir. 2000).

A prudential limitation on standing, unlike constitutional standing, is subject to waiver and is not jurisdictional. *RK Co. v. See*, 622 F.3d 846, 851-52 (7th Cir. 2010); *Rawoof*, 521 F.3d at 756-57. It is within the court's discretion whether to raise, *sua sponte*, questions about prudential standing. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012). Additionally, a court can consider questions of prudential standing even if the resolution of a constitutional standing issue is in doubt or unclear. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 585 (1999) (saying there is no "jurisdictional hierarchy" and that courts may "choose among threshold grounds for denying audience to a case on the merits"); *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 179 (D.C. Cir. 2012); *In re LimitNone, LLC*, 551 F.3d 572, 576-77 (7th Cir. 2008).

**B. The Theories Under Which Mr. Meurlot Seeks Relief
Establish His Lack of Standing**

Standing is not dependent on the merits of a party's claim, but nevertheless often turns on the nature and origin of that claim. *Warth*, 422 U.S. at 500; *see Flast v. Cohen*, 392 U.S. 83, 101-02 (1968); *Shakman v. Dunne*, 829 F.2d 1387, 1394-95 (7th Cir. 1987). Determining whether a person

-12-

has standing requires a fact-based analysis of the person's right to invoke the jurisdiction of the court to resolve the particular problem at hand. In bankruptcy cases, for example, even a debtor does not have standing with respect to every issue. *See, e.g., Cable v. Ivy Tech State College*, 200 F.3d 467, 472 (7th Cir. 1999) (holding that in a Chapter 7 case, only the trustee has standing to pursue claims of the estate). Thus, the appropriate way to evaluate Mr. Meurlot's standing here is to review the claims he is making and the relief he seeks.

The gist of Mr. Meurlot's claims and the relief he seeks is to avoid the results of the automatic stay coming into effect when this case was filed. The automatic stay, which is effective upon the filing of a petition, prohibits, *inter alia*, the continuation of judicial proceedings and the enforcement of judgments against debtors. 11 U.S.C. §§ 362(a)(1), (2). Actions taken in violation of the automatic stay generally are void. *Middle Tenn. News Co., v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001). Because Mr. Meurlot purchased the Debtor's real estate at a sheriff's sale which occurred after this case was filed, the sale violated the stay and is void.[5] To avoid that result, Mr. Meurlot seeks to have this Court find that the automatic stay did not come into effect when this case was filed, or, if it did, the stay should be annulled. The standing issue must, therefore, be analyzed in the context of these precise issues.

---

[5] The issue of whether the sheriff's sale took place before or after 8:37 a.m. on May 5, 2009, is not squarely before this Court. The Debtor says the sale took place after his petition was filed and HSBC has conceded the point. According to the state court record, no one who was actually at the sale will testify that the sale occurred before 8:37 a.m. Mr. Meurlot may not have formally conceded the point, but all of his arguments before this Court seek relief which would only be meaningful if the sheriff's sale occurred post-petition. Accordingly, for purposes of this Opinion, this Court assumes that the sheriff's sale occurred after 8:37 a.m. on May 5, 2009. This assumption is without prejudice to any party in interest raising the issue directly in the future.

**1. Section 109(g) Eligibility**

Mr. Meurlot first argues that the Debtor was not eligible to be a debtor when he filed this case because of the circumstances under which his first case was dismissed. Before the state court, Mr. Meurlot successfully argued that the Debtor's failure to provide his tax return to the Trustee constituted a wilful failure of the Debtor to abide by an order of this Court, thus making the Debtor ineligible to file for 180 days after his first case was dismissed. *See* 11 U.S.C. § 109(g)(1). And, he convinced the state court that, because of that ineligibility, no stay went into effect upon the filing of this case. *See* 11 U.S.C. § 362(b)(21)(A).

Before this Court, Mr. Meurlot has conceded that there was never any court order entered in the first case requiring the Debtor to provide his tax return to the Trustee. Rather, the Debtor had a statutory duty to provide the return. 11 U.S.C. § 521(e)(2)(A). And, the statute requires dismissal of the case when the tax return is not provided unless a debtor can establish that the failure to provide the return was due to circumstances beyond his control. 11 U.S.C. § 521(e)(2)(B).

In view of these concessions, Mr. Meurlot now asks this Court to find that the Debtor's first case was dismissed due to the Debtor's wilful failure to appear before this Court in proper prosecution of his case. Alternatively, Mr. Meurlot asks this Court to consider allegations set forth in a separate Motion to Dismiss filed in the first case by the Trustee which was pending but had not been scheduled for hearing when the case was dismissed. In short, Mr. Meurlot is asking this Court to rewrite the history of the dismissal of Debtor's first case in order to create a revised record to support a finding of ineligibility to file this case.

Despite the obvious problems with the merits of Mr. Meurlot's arguments, the issue before this Court is not whether Mr. Meurlot can prevail on his arguments but whether he has standing to

raise them in the first place. And, it is clear that Mr. Meurlot does not have such standing.

Mr. Meurlot has not plead nor can he show any injury he sustained by either the filing of or the dismissal of the Debtor's first case. He was not a creditor or party in interest in that case. Mr. Meurlot makes absolutely no claim of any interest in the Debtor's property when the first case was dismissed in December 2008. Thus, Mr. Meurlot has no claim to a legally-protected interest that has been wrongfully invaded. *See Lujan*, 504 U.S. at 560.

Because he can establish no injury whatsoever from the events of the Debtor's first case, Mr. Meurlot does not have constitutional standing to ask this Court to reconsider the terms of its order dismissing the first case. *Id*. at 560-61. And, to the extent that HSBC may claim that it was injured in some way by what occurred in the first case — and, it has not made any such claim before this Court — Mr. Meurlot lacks prudential standing to seek relief on behalf of HSBC. *Newdow*, 542 U.S. at 12.

### 2. Section 109(h) Eligibility

Mr. Meurlot's second eligibility argument relates to the fact that the Debtor did not file the requisite certificate of credit counseling when he filed this case. 11 U.S.C. § 109(h). Relying on *In re Salazar*, 339 B.R. 622 (Bankr. S.D. Tex. 2006), Mr. Meurlot claims that the Debtor's failure to obtain pre-petition credit counseling resulted in no automatic stay coming into effect when this case was filed. *Salazar*, 339 B.R. at 629-30. In making this argument, Mr. Meurlot overlooks the fact that the Debtor later, albeit tardily, filed a certificate evidencing that he had obtained the counseling before filing this case. Further, he fails to understand that *Salazar* represents the minority view on the issue. The clear weight of authority is that the failure to obtain pre-petition credit counseling is

not jurisdictional and does not interfere with the commencement of the automatic stay upon a case filing. *See Adams v. Zarnel* (*In re Zarnel*), 619 F.3d 156, 170 (2d Cir. 2010); *DeHart v. John* (*In re John*), 479 B. R. 643, 648 (Bankr. M.D. Pa. 2012); *In re Gossett*, 369 B.R. 361, 372 (Bankr. N.D. Ill. 2007).

But, again, the issue before this Court is not whether there is merit to Mr. Meurlot's arguments. Rather, the question is whether he has standing to raise the arguments and this Court must find, again, that he does not.

When this case was filed, Mr. Meurlot was not a creditor of the Debtor or otherwise a party in interest in this case. He was, at best, a prospective buyer of the Debtor's property with his agents waiting for a sheriff's sale of the property to begin. At the time, he had no cognizable interest in the Debtor's property and, if HSBC or the state court had continued the sale for any reason, he would have had no right to complain or seek redress. Thus, Mr. Meurlot was not injured by the filing of this case and, therefore, does not have constitutional standing to seek relief from this Court regarding the circumstances of the filing. *Lujan*, 504 U.S. at 560. Put bluntly, it is not Mr. Meurlot's business to complain to this Court about whether the Debtor fulfilled his statutory credit counseling requirement.

Mr. Meurlot also does not have prudential standing to raise this eligibility issue. HSBC may claim some injury and right to be heard regarding the Debtor's eligibility to file this case. But, HSBC has made no complaint to this Court about the issue, and Mr. Meurlot cannot prosecute the issue on behalf of HSBC. *Newdow*, 542 U.S. at 12; *Kyles*, 222 F.3d at 294.

### 3. Annulment of the Stay

Mr. Meurlot's final argument is that, even if the automatic stay did come into effect upon the

filing of this case, this Court should grant a retroactive annulment of the stay. Relief from the automatic stay may be granted upon the request of a party in interest, and annulment of a stay is specifically allowed. 11 U.S.C. § 362(d). The annulment of an automatic stay has the effect of validating actions taken in violation of the stay which otherwise would be void or, at least, voidable. *See Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989). Mr. Meurlot contends that, if the stay is annulled, the sheriff's sale on May 5, 2009, would be validated.

Although specifically provided for in the Code, the granting of retroactive stay relief is an extraordinary remedy and a remedy that should only be granted under limited and special circumstances. *See Will v. Ford Motor Credit Co.* (*In re Will*), 303 B.R. 357, 368 (Bankr. N.D. Ill. 2003); *In re Confidential Investigative Consultants, Inc.*, 178 B.R. 739, 751 (Bankr. N.D. Ill. 1995). A variety of factors may be considered in determining whether to annul a stay, and important among those factors is whether the stay violation giving rise to the request for annulment occurred without knowledge of the existence of the stay. *Confidential Investigative Consultants,* 178 B.R. at 752; *see also In re Wapotish*, 2009 WL 1916965, at *2 (Bankr. N.D. Ill. July 2, 2009) (listing seventeen different factors to be considered). Delays by a debtor in giving notice of the stay and any resulting prejudice to the creditor are also key factors. *Confidential Investigative Consultants*, 178 B.R. at 752.

As with the other issues discussed above, the threshold question for this Court is whether Mr. Meurlot has standing to request relief from this Court. Mr. Meurlot relies on *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018 (7th Cir. 2006), in claiming that he does have standing. But his authority is not on point. *Aurora Loan* held that a purchaser at a sheriff's sale has a legally protected interest sufficient to create standing to appear and be heard at a sale confirmation hearing. *Id.* at 1024. *Aurora Loan* did not involve a situation where the validity of the sale was at issue. And, the

-17-

case has nothing to do with issues of standing before this Court.

Mr. Meurlot was not injured by the filing of this case. And, he is not the party that violated the automatic stay and, therefore, needs relief from stay. The injury he now claims is the investment he made in improving the property after the sale was confirmed. But, his injury was caused not by the Debtor but rather by his own voluntary decision to go forward with his investment notwithstanding the Debtor's appeal of the state court orders. Mr. Meurlot does not have constitutional standing to seek retroactive stay relief from this Court. *Pa. v. N.J.*, 426 U.S. at 664.

Further, Mr. Meurlot does not have prudential standing to seek annulment of the stay in this case. The real party in interest is HSBC. HSBC violated the stay by continuing the enforcement of its judgment against the Debtor through a sheriff's sale of his property after this case was filed. Although there seems to be no question that the initial violation was technical and without knowledge, HSBC's failure to seek relief from this Court for over three years is of concern. Creditors have an affirmative duty to promptly remedy stay violations when such violations are brought to their attention, and technical stay violations can turn into wilful stay violations when that duty is ignored. *Will*, 303 B.R. at 364.

In hindsight, it is obvious that HSBC should have sought relief from the stay when it learned the Debtor filed this case. The state court docket indicates that HSBC knew this case was filed by the time of the hearing on May 26, 2009. If HSBC had sought relief at that time, this Court might have annulled the stay and validated the sale, it might have granted prospective relief only and required the sale to be conducted a second time, or it might have denied relief. In any event, the matter would have been settled. But, HSBC sought no relief from this Court then and, apparently, seeks no relief from this Court now.

Mr. Meurlot does not have prudential standing to make the case for HSBC. *See Kyles*, 222 F.3d at 294. And, at the hearing, Mr. Meurlot actually made no attempt to justify the conduct of HSBC or otherwise establish grounds for annulment of the stay on behalf of HSBC. Stay relief cannot be granted in favor of HSBC on the motion of Mr. Meurlot and on the record before this Court.

### IV. CONCLUSION

Mr. Meurlot has not established any right to seek relief from this Court. He is and always was, at best, a bystander to this case. He chose to make a significant investment in a property purchased at a sheriff's sale where the purchase was clouded from the inception by a pending bankruptcy, a questionable confirmation hearing, and an appeal. And, after the Appellate Court of Illinois reversed and remanded the foreclosure case, Mr. Meurlot chose to fight HSBC's efforts to back up and start over. That choice resulted in another appeal and another reversal. Significant resources have been expended by all involved, but that is simply not a basis to ignore Mr. Meurlot's lack of standing. Mr. Meurlot's Motion for Relief from Stay will be denied.

The real parties in interest here are the Debtor and HSBC. Neither party has properly sought relief from this Court. This case will remain open for sixty days from the date of this Opinion and, if nothing has been filed or is pending at that time, this case will again be closed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###