**SIGNED THIS: July 18, 2013**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | Case No. 09-71353 |
| ANTHONY JAMES GRASON, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

# O P I N I O N

Before the Court is a Motion for Relief from Stay filed by HSBC Bank, USA, N.A. ("HSBC"). HSBC sold real estate owned by Anthony Grason ("Debtor") at a sheriff's sale literally within minutes after this case was filed. Now, after more than four years of state court litigation with the Debtor, including two trips to the Appellate Court of Illinois, HSBC seeks to validate the sheriff's sale by asking this Court to find that no automatic stay took effect when this case was filed, or, if the automatic stay did come into effect, to annul the stay. Because HSBC has failed to establish that it is entitled to any of the relief it seeks, the Motion for Relief from Stay will be denied.

## I. FACTUAL & PROCEDURAL BACKGROUND

The facts and procedural history of this case are well known to the parties and to the Court and are set forth in full in a previous opinion.[1] The facts and procedural history will be repeated only in summary fashion here.

The Debtor has filed three Chapter 13 cases in this Court. The first case (No. 08-71631) was filed July 8, 2008. In that case, HSBC obtained relief from the automatic stay to allow it to exercise its right to foreclose on the Debtor's property at 4202 West Route 36, Decatur, Illinois. The first case was dismissed on December 8, 2008, on the motion of the Chapter 13 Trustee ("Trustee") based upon Debtor's failure to provide copies of required tax returns.

The Debtor filed this case on May 5, 2009. The Debtor's property at 4202 West Route 36 was scheduled to be sold by the Macon County Sheriff at a sale set for 8:30 a.m. that morning. The sale did occur that morning but HSBC now admits that the sale did not happen before 8:37 a.m.     the precise time this case was filed. HSBC says it had no knowledge of the case filing when the sale occurred, and the Debtor has not alleged that HSBC had any such knowledge or that he made any effort to notify HSBC of his case filing before the sale. This case was dismissed on May 21, 2009, due to the Debtor's failure to file a credit counseling certificate. A later Motion to Reinstate was denied when the Debtor's attorney reported to the Court that, although the Debtor had submitted proof of the credit counseling, the Debtor had not provided sufficient information to file missing schedules and other documents necessary for the case to proceed.

The Debtor filed his third bankruptcy case (No. 09-72064) on July 13, 2009. The case was dismissed the next day because the Debtor failed to file a credit counseling certificate or a request to have the filing of that certificate waived or excused. The case was reinstated on August 11, 2009, but was dismissed again about a month later on the motion of the Trustee because the Debtor had

---

[1] *See In re Grason*, 486 B.R. 448 (Bankr. C.D. Ill. 2013).

failed to begin making his plan payments.

At the sheriff's sale held on May 5, 2009, Karl Meurlot was the winning bidder.[2] The sale was confirmed by the state court on June 30, 2009, and Mr. Meurlot was awarded possession at that time. The Debtor appealed the state court orders confirming the sale and awarding possession to Mr. Meurlot. The Debtor alleged that the sale had been conducted in violation of the automatic stay and, accordingly, was void. Because the other parties, HSBC and Mr. Meurlot, had not yet conceded the issue of whether the sale actually occurred after the case filing, the Appellate Court remanded the case and directed the lower court to make a specific finding as to the time the sheriff's sale actually occurred.

On remand, the lower court declined to make such a finding. The lower court reasoned that the time of sale was irrelevant because, in its view, the Debtor was ineligible to be a debtor when he filed this case and, therefore, that the automatic stay never took effect. The lower court also denied HSBC's motion seeking to vacate the sheriff's sale. The Debtor again appealed, and the Appellate Court, for a second time, reversed the lower court and recommended that the parties seek relief from this Court.

This case was reopened on October 30, 2012, on the motion of Mr. Meurlot. This Court

---

[2] In prior proceedings before this Court, Karl Meurlot identified himself as the winning bidder at the sheriff's sale. He filed a Motion for Relief from Stay in that capacity which this Court denied for lack of standing. The Debtor aggressively opposed Mr. Meurlot's Motion but never argued that Mr. Meurlot was not the winning bidder or buyer at the sale. Now, however, the Debtor has attached a copy of the actual sheriff's deed to a Motion for Sanctions filed April 1, 2013. That deed shows that the holder of the certificate of sale and the entity whose purchase was confirmed by order of the state court was C. Deadrick Development, Inc. This information raises questions about whether Mr. Meurlot's precise status was accurately conveyed to this Court. Because Mr. Meurlot has appealed the Court's previous order to the District Court, no action will be   or can be   taken at this time to inquire about this discrepancy. If, however, Mr. Meurlot individually was not the winning bidder and buyer at the sheriff's sale, then his standing to seek relief here is likely even more remote than this Court previously found, and his exact status should be disclosed as he proceeds with his appeal and in further proceedings, if any, before this Court.

previously denied Mr. Meurlot's Motion for Relief from Stay, finding that he did not have standing to seek relief from this Court. Mr. Meurlot is not and never has been a creditor of the Debtor, nor is he a party in interest in either this case or the Debtor's first case. Mr. Meurlot's appeal of that decision is pending before the District Court.

After Mr. Meurlot was denied relief from stay due to lack of standing, HSBC filed its Motion for Relief from Stay. HSBC, as a creditor and the foreclosing mortgagee on the Debtor's property, advances two arguments for its request for stay relief. First, HSBC says that the Debtor's petition in this case did not give rise to the automatic stay because the Debtor was not eligible to be a debtor. HSBC then says that, even if the Debtor's petition resulted in the automatic stay going into effect, the stay should be annulled. The Debtor has filed a response objecting to HSBC's motion for stay relief.

The Debtor also has filed a Motion for Sanctions against HSBC for allegedly willfully violating the automatic stay in this case. The Debtor claims that HSBC willfully violated the stay by proceeding with the sheriff's sale on May 5, 2009, in spite of its knowledge that he had filed a bankruptcy petition earlier that same day, and by refusing to "undo" the sale. HSBC has filed a response in which it again insists that the Debtor was not an eligible debtor and, alternatively, that the stay should be annulled. HSBC also denies having had knowledge of the Debtor's case filing at the time the sheriff's sale took place.

On April 16, 2013, this Court held a hearing on HSBC's Motion for Relief from Stay. At the hearing, the Court questioned whether the timing of the sheriff's sale was still a matter of disputed fact. HSBC's attorney acknowledged that he had no evidence to present in support of the position that the sale occurred before this case was filed. Accordingly, he conceded that the sale occurred after the case filing but without knowledge of the filing. Based on that concession and the limited record before it describing the events preceding the sale, this Court stated that it would find that the

May 5, 2009, sheriff's sale occurred after 8:37 a.m. and, therefore, after this case was filed. With the only previously-disputed factual issue resolved, the legal issues raised by HSBC's Motion are ready for decision. At the Debtor's request, his Motion for Sanctions has been held in abeyance pending resolution of HSBC's Motion.

## II. JURISDICTION

This Court has jurisdiction over the issues presented here pursuant to 28 U.S.C. §1334. Motions for relief from the automatic stay are core proceedings. *See* 28 U.S.C. §157(b)(2)(A), (G).

## III. LEGAL ANALYSIS

An automatic stay comes into effect upon the filing of a bankruptcy petition and prohibits, *inter alia*, the continuation of judicial proceedings and the enforcement of judgments against debtors. 11 U.S.C. §362(a)(1), (2). Actions taken in violation of the automatic stay generally are void. *See Middle Tenn. News Co.*, Inc. v. *Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001). HSBC now admits that the sheriff's sale of the Debtor's property occurred after this case was filed. Accordingly, the only way for HSBC to escape having the sale of the Debtor's property declared void is to have this Court find that, under the particular facts of this case, no stay went into effect upon the case filing or, if a stay did take effect, the stay should be annulled. Unfortunately for HSBC, it is not entitled to any of the relief it seeks.

### A. An Automatic Stay Went into Effect When this Case was Filed

HSBC argues that the Debtor's filing of a petition on May 5, 2009, did not create an automatic stay because the Debtor was not eligible to be a debtor at that time. Specifically, HSBC refers to §109(g)(1) of the Code, which provides:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if
>
> > (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case . . . ."

11 U.S.C. §109(g)(1).

HSBC argues that if the Debtor was not eligible to be a debtor, then no automatic stay went into effect upon the case filing. An express exception to the broad parameters of the automatic stay is contained in the Code and allows continuation of acts to enforce liens in real property if a debtor is ineligible under §109(g). *See* 11 U.S.C. §362(b)(21)(A).

The parties agree that the Debtor's first case was dismissed on December 8, 2008, which was within 180 days of the Debtor filing his petition in this case on May 5, 2009. They disagree on whether the first case was dismissed due to the Debtor's willful failure to abide by an order of this Court or under other circumstances which would have created ineligibility to file this case. HSBC points to the fact that the Trustee filed three motions to dismiss the Debtor's first case. HSBC argues that those multiple motions demonstrate that the Debtor's first case was dismissed for willful failure to abide by a court order.

The first dismissal motion, filed August 22, 2008, sought dismissal based on §521(e)(2)(B), which mandates that a court dismiss a case if the debtor fails to provide the trustee with the debtor's most recently filed Federal income tax return, as required by §521(e)(2)(A)(i). *See* 11 U.S.C. §521(e)(2). On September 11, 2008, the Trustee withdrew the first motion to dismiss. The Trustee filed a second motion to dismiss on October 17, 2008, alleging, *inter alia*, various facts regarding the Debtor's unexplained acquisition of certain real and personal property, the Debtor's good faith,

and the feasibility of the Debtor's Amended Chapter 13 Plan. On November 11, 2008, the Trustee filed his third motion to dismiss, saying that the Debtor's case should be dismissed for failure to provide the Trustee with various documents as required by §521, including a tax return and proof of income and expenses. *See* 11 U.S.C. §521(e)(2).

On November 6, 2008, this Court held a hearing on the Trustee's second motion to dismiss and continued the matter for further hearing to December 4, 2008. At the December 4th hearing, the Court heard arguments on both the Trustee's second motion to dismiss and the Trustee's third motion to dismiss.[3] At the conclusion of the hearing, the Court granted the Trustee's third motion to dismiss, stating on the record and expressly providing in a subsequent written order that the case was dismissed pursuant to §521(e)(2)(B). This Court also stated on the record that the Trustee's second motion to dismiss raised factual issues which were disputed by the Debtor and that would require an evidentiary hearing to resolve. This Court concluded that it was unnecessary to hold such a hearing because the case was being dismissed anyway on the Trustee's third motion. An order mooting the second motion to dismiss was entered to clarify that the issues raised therein had not been and would not be reached.

HSBC's argument that the Debtor's first case was dismissed based on his willful failure to abide by a court order is simply incorrect. The order granting the third motion to dismiss was based only on §521(e)(2)(B), not on any finding that the Debtor violated a court order. In fact, no such court order ever was identified by HSBC. Furthermore, the willfulness component of §109(g)

---

[3] HSBC did not have a transcript of the December 4, 2008, hearing prepared. HSBC's arguments about the reasons the first case was dismissed appear to be based solely on a review of the docket in that case. This Court has, however, refreshed its recollection by listening to the audio recording of the December 4th hearing.

requires specific findings that this Court never made. *See Travelers Ins. Co. v. Olson* (*In re Olson*), 102 B.R. 147, 150 (Bankr. C.D. Ill. 1989) (Altenberger, J.); *see also In re Berryhill*, 127 B.R. 427, 433-34 (Bankr. N.D. Ind. 1991) (dismissing case under §109(g)(1) after making extensive factual findings).

Moreover, HSBC's suggestion that this Court can now consider the allegations in the Trustee's second motion to dismiss and hold that those allegations support a finding that the Debtor was not eligible to file this case also is wrong. First, the allegations in the second motion were generally that the Debtor's plan was not feasible and that the Debtor had not adequately explained his financial affairs. The allegations were not based on a failure of the Debtor to abide by the orders of this Court. Second, to the extent that HSBC seeks relief from the order dismissing the Debtor's first case, such request is untimely and without grounds. *See* Fed. R. Civ. P. 60(b), (c)(1); Fed. R. Bankr. P. 9024. Additionally, Rule 60(b) may be used only to set aside a prior order, not to grant additional affirmative relief on top of the relief contained in the prior order. *See* Fed. R. Civ. P. 60(b), Fed. R. Bankr. P. 9024; *Delay v. Gordon*, 475 F.3d 1039, 1044-45 (9th Cir. 2007); *United States v. One Hundred Nineteen Thousand Nine Hundred Eighty Dollars ($119,980)*, 680 F.2d 106, 107-08 (11th Cir. 1982). Revisiting the dismissal order and granting the additional relief of a 180-day bar to refiling — with the effect that the Debtor was ineligible when he filed this case — would run afoul of Rule 60(b). There is no allegation that the Court's order dismissing the Debtor's first case was clearly erroneous, or was erroneous at all. And, the fact that more than four years has passed since the date of the order dismissing the Debtor's first case is reason enough for this Court to decline HSBC's invitation to rewrite the dismissal order in the first case.

HSBC suggests no procedural or substantive authority to go back at this time and consider

information which was only alleged and not proven by the Trustee, which was disputed on the record by the Debtor and his attorney, and which this Court specifically declined to rely upon at the time the first case was dismissed. HSBC was a party to the first case, and its attorneys received notice of the December 4th hearing on both motions to dismiss. If HSBC wanted to be heard on the dismissal issues, it should have appeared in 2008.

Finally, it must be noted that local custom and practice, along with fundamental due process considerations, require that a motion to dismiss which seeks not only dismissal but a bar to refiling, set forth all such requested relief. This Court has consistently followed a practice of only considering whether §109(g)(1) is implicated in a dismissal if the motion seeking dismissal specifically seeks such additional relief. Here, neither the Trustee's second nor third motions to dismiss requested a bar to refiling, and the prospect of a bar to refiling was not discussed at the December 4th hearing. The Debtor was not given notice that a bar to refiling was being sought as part of the dismissal process in the first case. To impose a §109(g)(1) bar to refiling, a court must make extensive and specific findings of willfulness which this Court never made. *See In re Hollis*, 150 B.R. 145, 148-49 (D. Md. 1993) (reversing the bankruptcy court for imposing bar to refiling without making specific finding of willfulness); *Olson*, 102 B.R. at 150. The basic tenets of procedural due process and fundamental fairness prohibit this Court from imposing a bar to refiling on the Debtor, four years after the original hearing, when the topic of such a bar was not addressed at the time.

HSBC has premised its argument that no automatic stay took effect when the Debtor filed this case on the idea that the Debtor was ineligible under §109(g) at the time he filed it. The Court finds that §109(g) did not render the Debtor ineligible when he filed this case and that the automatic stay took effect when the Debtor filed his petition.

**B. The Court Will Not Annul the Automatic Stay**

Annulment of the automatic stay is an unusual remedy which assumes in the first instance that there was a violation of the stay. The two most important factors in considering whether to annul the automatic stay are whether the stay violation was willful and whether the movant would be unfairly prejudiced by the continuation of the stay. *See Arrow Rd. Constr. Co. v. Bridgeview Bank Grp.* (*In re Brittwood Creek, LLC*), 450 B.R. 769, 775 (N.D. Ill. 2011); *Will v. Ford Motor Credit Co.* (*In re Will*), 303 B.R. 357, 368 (Bankr. N.D. Ill. 2003). Courts also consider such factors as: whether the debtor acted in bad faith; whether grounds for stay relief existed at the time of the stay violation such that relief likely would have been granted prior to the violation; whether the creditor promptly sought retroactive stay relief; the number of bankruptcy filings by the debtor; the extent of any prejudice to the creditor or a bona fide purchaser; the debtor's compliance with the Bankruptcy Code, and; whether the debtor asserted its rights quickly. *See In re Wapotish*, 2009 WL 1916965, at *2 (Bankr. N.D. Ill. July 2, 2009). Deciding whether annulment is appropriate is not a formulaic exercise, but instead requires careful consideration of the relevant facts and circumstances. *See Brittwood Creek*, 450 B.R. at 774-76. The decision whether to grant an annulment of the stay is within the sound discretion of the court. *Id.* at 775.

A "willful" violation of the automatic stay requires knowledge on the part of the violating party that the debtor has filed a bankruptcy petition. *See In re Gossett*, 369 B.R. 361, 375 (Bankr. N.D. Ill. 2007). If the violation of the stay is not willful because the creditor had no knowledge of the stay, then it may be considered only a "technical" violation. *See Will,* 303 B.R. at 364. But, what begins as a technical violation of the stay can become willful because a creditor has an affirmative duty to remedy a stay violation when it learns of the bankruptcy case filing. *Id.*

Here, the holding of the sheriff's sale was clearly a violation of the stay. *See* 11 U.S.C. §362(a). The sale occurred after this case was filed and, therefore, after the stay went into effect. HSBC was unaware of the Debtor's filing at the time of the sheriff's sale and, accordingly, HSBC's initial violation of the stay was merely "technical," not willful. *See In re Welch*, 296 B.R. 170, 172 (Bankr. C.D. Ill. 2003).

But, HSBC became aware of the existence of this case by May 26, 2009. The state court docket reflects that, on that day at a hearing to confirm the sheriff's sale, one of the parties present at the hearing suggested the Debtor might be in bankruptcy. Despite that notice, HSBC never came to this Court to seek relief from the stay in order to retroactively validate the sheriff's sale. Instead, since the state court confirmed the sheriff's sale on June 30, 2009, HSBC, Mr. Meurlot, and the Debtor have made two trips to the Illinois Appellate Court regarding the validity of the sheriff's sale. Only now, nearly four years after its initial stay violation and after its second appellate defeat, has HSBC decided to seek relief from this Court.

HSBC's decision to proceed with confirmation of the sheriff's sale and not to come to this Court for relief promptly after discovering its violation of the automatic stay is troubling. A creditor's prompt action in remedying a stay violation is one of the key factors in deciding whether any remedy granted should include retroactive relief in the form of annulment. *See Wapotish,* 2009 WL 1916965, at *2. Four years is hardly prompt, and HSBC has provided no good explanation for the delay. At the hearing, HSBC's counsel suggested that the issue at the time was perceived as being a state court matter, apparently, because HSBC and Mr. Meurlot had misrepresented the circumstances of the dismissal of the Debtor's first case and convinced the state court that there was no stay violation. But HSBC now admits that the order dismissing the Debtor's first case was not

-11-

based on the Debtor's violation of a court order and makes no compelling argument that convincing the state court to misinterpret the dismissal order was a proper course of conduct.

Likewise, prejudice to the creditor and potential prejudice to third party buyers are factors to be considered in deciding whether to annul a stay. *Id.* HSBC has presented no evidence and little argument that it will be prejudiced by denial of its motion. And, this Court has already found that the prejudice, if any, to Mr. Meurlot is self-inflicted. *See Grason*, 486 B.R. at 460-61. HSBC and Mr. Meurlot knew of this case filing within weeks of the sale and could have mitigated any alleged damages by HSBC seeking relief at that time or by both parties agreeing to voluntarily vacate the sale. Instead, even after the loss of the first appeal, HSBC failed to seek relief here and Mr. Meurlot resisted the efforts of HSBC to start over.

For this Court to ignore the fact that HSBC litigated in state court for nearly four years after its initial stay violation before coming to this Court to seek stay relief would set a worrisome precedent. The integrity of the automatic stay would be compromised if creditors were free to ignore the complaints of debtors and unilaterally decide not to seek relief after technical violations. The automatic stay is part of the foundation of the Code and bankruptcy practice. Creditors must not be allowed to ignore a stay with impunity. If HSBC was uncertain about the application of the automatic stay in this case, it bore the burden of seeking clarification from *this* Court, not the state court. *Galmore v. Dykstra (In re Galmore)*, 390 B.R. 901, 906 (Bankr. N.D. Ind. 2008). Its failure to do so must result in consequences. *See In re Magallanez*, 403 B.R. 558, 564 (Bankr. N.D. Ill. 2009) (request for stay annulment five years after violation barred by doctrine of laches).

HSBC emphasizes that the Debtor's cases have not been filed in good faith but rather have been filed to thwart the foreclosure process. The Court is aware of the frustration and expense

suffered by creditors when bankruptcy cases are filed on the eve of a sheriff's sale or other legal proceedings. On the other hand, such filings are somewhat the "bread and butter" of what we do. HSBC was represented in the foreclosure action by a law firm that does a significant amount of both foreclosure and bankruptcy work throughout Illinois. This was certainly not the first time nor will it be the last time that HSBC participates in a sheriff's sale conducted without knowledge but nevertheless in technical violation of an automatic stay. HSBC and its attorneys know that when such a technical violation occurs, the process for fixing that problem is to seek stay relief. But, inexplicably, HSBC and its attorneys failed to follow the process here. The remedy for that failure is not to ignore their four year delay and, thereby, impose no penalty for ignoring what they now concede was a stay violation. HSBC seeks complete absolution. But in the absence of any reasonable justification for HSBC's conduct, the consequences must be more serious.

The Code itself provides remedies for creditors to deal with serial filers and bad-faith filers. Generally, the automatic stay continues for only thirty days when a second case is filed within a year of a dismissal unless a court orders otherwise after creditors have been given an opportunity to be heard. *See* 11 U.S.C. §362(c)(3). If two or more cases are filed and dismissed within a year, no automatic stay goes into effect upon a third case filing within a year. *See* 11 U.S.C. §362(c)(4). And, when the property involved as collateral is real estate, a creditor who has been subject to multiple bankruptcy filings and resulting stays may seek *in rem* relief which will prevent the imposition of new stays upon new case filings for two years. *See* 11 U.S.C. §362(d)(4). HSBC and its attorneys know these Code provisions and the options they provide. They also know that ignoring a stay violation is never an available option.

The decision whether to annul a stay is within the sound discretion of this Court. *See*

*Christian v. Citibank, F.S.B.*, 231 B.R. 288, 289-90 (N.D. Ill. 1999); *In re Pleasant*, 320 B.R. 889, 894 (Bankr. N.D. Ill. 2004). This Court declines to exercise its discretion in favor of HSBC. HSBC allowed nearly four years to pass before seeking annulment of the stay despite having received timely notice of the filing of this case. While HSBC's concerns about the Debtor's good faith are not wholly without merit, they are clearly outweighed by its inexplicable and unjustified delay in coming to this Court to seek relief. *See Magallanez*, 403 B.R. at 564. Notwithstanding the frustration caused by a last minute bankruptcy filing, litigants, lawyers, and state courts must respect the automatic stay. Here, the automatic stay was not respected. This Court will not exercise its discretion to validate that disrespect.

### IV. CONCLUSION

The Debtor was eligible to be a debtor when he filed this case and, therefore, an automatic stay binding on HSBC went into effect upon the filing of this case. The sheriff's sale of the Debtor's property at 4202 West Route 36, Decatur, Illinois, occurred after 8:37 a.m. on May 5, 2009, and, therefore, occurred after the automatic stay went into effect. The sheriff's sale was void and remains void because this Court declines to grant retroactive relief to HSBC and declines to annul the stay.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###